```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
_____x
                             :
FRANK MORGAN,                :      Civil Action
                             :
            Plaintiff,       :      No.  2:18-cv-01450
                             :
v.                           :
                             :      Date:  July 29, 2020
LOGAN COUNTY COMMISSION,     :
et al.,                      :
                             :
            Defendants.  :
_____x
```

          **PARTIAL** TRANSCRIPT OF PROCEEDINGS HELD
             DURING JURY TRIAL - DAY 2
   BEFORE THE HONORABLE THOMAS E. JOHNSTON, CHIEF JUDGE
                UNITED STATES DISTRICT COURT
              IN CHARLESTON, WEST VIRGINIA


APPEARANCES:
For the Plaintiff:

                         KERRY A. NESSEL, ESQ.
                         The Nessel Law Firm
                         519-1/2 Eighth Street
                         Huntington, WV 25701

                         ABRAHAM J. SAAD, ESQ.
                         Saad Law Office
                         P. O. Box 1638
                         Huntington, WV 25717-1638

For the Defendants:

                         WILLIAM E. MURRAY, ESQ.
                         Anspach Meeks Ellenberger
                         Suite 1700
                         900 Lee Street East
                         Charleston, WV 25301

                         WENDY E. GREVE, ESQ.
                         Pullin Fowler Flanagan Brown &
                         Poe
                         901 Quarrier Street
                         Charleston, WV 25301


Court Reporter:          Ayme Cochran, RMR, CRR
Proceedings recorded by mechanical stenography;
transcript produced by computer.

```
1            PARTIAL PROCEEDINGS had before The Honorable Thomas E.

2    Johnston, Chief Judge, United States District Court,

3    Southern District of West Virginia, in Charleston, West

4    Virginia, on July 29, 2020, as follows:

5            (Outside presence of jury)

6                 THE COURT:  The plaintiff may return to the

7    witness stand.

8                 MR. NESSEL:  Your Honor, I have one brief issue

9    real quick, if I may.

10                THE COURT:  Can the plaintiff go to the witness

11   stand in the meantime?

12                MR. NESSEL:  Oh, sure.  Yeah.  I don't see why

13   not.  It's not going to affect what I'm about to say.

14                THE COURT:  By the way, just so you know, my court

15   reporter's father is a retired barber.  So, we had some

16   laughs this morning about what happened in the barber shop

17   when she was growing up.

18                MR. NESSEL:  I was wondering about that.  Well,

19   there you go.

20                THE COURT:  There you go.

21        All right.

22                MR. NESSEL:  If I may, Your Honor, briefly.

23   During questioning of witnesses, Ms. Greve was bringing up

24   what I consider 404(b) evidence.  No notice of intent to

25   introduce 404 was ever filed by anybody.  She's bringing up
```

1    criminal charges that have been dismissed, that were never

2    pursued.  She's bringing up a robbery charge; likewise,

3    never pursued.  This is character evidence and is clearly

4    outside the scope.  She cannot -- there is no reason she

5    should bring it in.

6        Now, the charges pertaining to the events that

7    transpired on April 20th of 2018, that should be admissible

8    because, of course, Frank pled to three of the ten to twelve

9    misdemeanors.  However, bringing up his prior criminal

10   history, I think, is irrelevant, highly prejudicial,

11   confuses the jury because there's no -- if there were a like

12   -- if there were a like charge concerning obstruction of an

13   officer, beating an officer, that would likely be fair game.

14   However, there's not, and what she's bringing up is just

15   charges that have been dismissed, that have been pursued.

16   Some of them, of course, he pled guilty to.  I don't think

17   -- I think that falls outside the parameters, exceptions, to

18   404(b).

19       Thank you, Your Honor.

20            THE COURT:  Ms. Greve?

21            MS. GREVE:  Thank you, Your Honor.

22       In plaintiff's complaint, plaintiff alleges that he

23   sustained physical injuries from contusions, lacerations,

24   abrasions and psychological and emotional injuries,

25   including, but not limited to, PTSD, anxiety, depression,

1    agoraphobia, insomnia, and other related and severe

2    injuries.

3        The witness has been involved in numerous other

4    instances throughout his life that could be alternative

5    explanations for PTSD, the injuries he allegedly sustained

6    on April 20th, 2018.  That could also explain the cause of

7    anxiety and depression.

8        It was plaintiff's counsel who elicited from this

9    witness, as well as Marissa Hudson, the history of drug

10   abuse and drug use and, specifically with this witness, he

11   testified that he hadn't been using drugs and the only drugs

12   that he used was crack cocaine.  He had been off it with one

13   exception of when he tested positive.  I believe he said

14   that was within the last year.  And so, we believe that has,

15   in fact, opened the door to his history of drug abuse.

16       The Court has already --

17           THE COURT:  Well, you're mixing the issues here.

18   He's not talking about drug abuse.

19           MR. NESSEL:  Not at all.

20           THE COURT:  I've already ruled on that.  He's

21   talking about other uncharged or un-convicted crimes, which

22   I think is a different issue.

23           MS. GREVE:  Well --

24           THE COURT:  And you went into this robbery thing

25   yesterday.

1          And, by the way, you didn't object.

2              MR. NESSEL:  I know, Your Honor.  I was --

3              THE COURT:  And so, I think, you know, we've gone

4     a little ways down that road, but now that he's raised the

5     issue, I think you need to justify how you get into that.

6              MS. GREVE:  So, the robbery, Your Honor, there

7     were statements that Mr. Morgan was involved in a fight.

8     The individual who could hear the fight going on actually

9     thought it was a fight between he and Marissa and, when they

10    open the door, they saw that Frank Morgan had another

11    individual down on the ground and was beating him while

12    holding a knife to that individual's throat.

13        We believe that it's possible that Mr. Morgan could

14    have sustained lacerations and/or abrasions while involved

15    in that fight that was less than 48 hours before the

16    incident in which he alleges that every -- every part of his

17    body was injured by the officers.

18             THE COURT:  Well, a fight is one thing.  You got

19    into some business about a robbery.

20             MR. NESSEL:  That's my whole point, Your Honor.

21    There's no -- Ms. Greve is going into things where she has

22    no evidence, no witnesses, she's not disclosed documents, or

23    she's not disclosed any witness that can testify exactly to

24    what she just said and it's irrelevant anyway.

25             THE COURT:  Well, to the extent that she has tried

1   to demonstrate that there were circumstances on a different

2   date that may have led to the injuries that are depicted in

3   all of these photographs, I think that's relevant.

4        However, I do not think you get to get into matters

5   that would be considered 404(b) material because you've

6   given no notice of it.  So, I don't -- I think you -- to the

7   extent that you want to insinuate that he's committed other

8   crimes that don't relate to -- that can't somehow explain

9   those injuries, I'm not going to let you do that.

10              MS. GREVE:  What about with respect to his felony

11  convictions, for his character for truthfulness, and what

12  about his time while he was incarcerated for evidence with

13  respect to his anxiety, depression, PTSD and emotional

14  distress?

15              THE COURT:  Well, I think I previously ruled that

16  with regard to his psychiatric conditions, assuming you can

17  lay a foundation, you can cross examine him about that.

18       What was the other thing?  There was something else you

19  said.

20              MS. GREVE:  So, it's the time period of

21  incarceration.  He's claiming agoraphobia.

22              THE COURT:  Oh, I'm sorry.

23              MS. GREVE:  Agoraphobia is one of the claims that

24  he's made in his complaint, is an injury resulting from his

25  -- this incident on the 20th, and I believe that that opens

1    the door and the general emotional distress claim we

2    discussed of his time period of incarceration prior to this

3    incident.

4        He's also claimed that he's now afraid of law

5    enforcement and he has anxiety issues.  I think that opens

6    the door for us to discuss what contact he's had with law

7    enforcement and what that interaction is since this arrest.

8        And I also believe that I can, without getting into

9    whether or not he's been criminally charged with things, I

10    can get into matters about whether or not Mr. Morgan was

11    engaged in acts that would be consistent with his injuries

12    and could cause emotional distress.

13        THE COURT:  Well, nobody's got an expert on the

14    psychological injuries, right?

15        MR. NESSEL:  That's right, sir.

16        THE COURT:  So, the only testimony we're going to

17    get about that is through him.  So, you're stuck with

18    whatever you get out of him.  And I've already ruled on

19    that.

20        With regard to his fear of law enforcement, he did

21    testify about that.  I think it's -- I'll let you go a

22    little ways into that for time subsequent to this incident

23    because I think he has opened the door to that, but if we

24    get into a full-throated examination about other criminal

25    charges, I'm going to stop you.  So, just -- there's a line

```
 1    to be drawn there.  And I'm not sure where it is, but you

 2    know now that we're going to be coming up to it.

 3         And, finally, there's the question of prior

 4    convictions.  I don't know what his criminal history is.  I

 5    gather he has a felony conviction; is that correct?

 6              MR. NESSEL:  In 1999, 21 years ago.

 7              THE COURT:  All right.  Well, let's take a look at

 8    the -- this is not a criminal case, so the rules are a

 9    little different.

10              MR. NESSEL:  Yes, sir.  I understand that.

11              THE COURT:  How many convictions do you intend to

12    get into as a matter of impeachment?

13              MS. GREVE:  Well, Your Honor, I was actually

14    trying to limit it for time reasons.  The first issue I do

15    certainly want to address because plaintiff's counsel -- the

16    first question that was asked of Mr. Morgan was the night he

17    was in jail and the response was that he had his home

18    confinement revoked.  So, the first charges I want to bring

19    up are the actual charges while he's incarcerated.

20         He's not incarcerated because his home confinement is

21    revoked.  He's incarcerated because he has pending criminal

22    charges.  We believe those criminal charges are also

23    admissible because they rebut some of the other testimony

24    that has come from Mr. Morgan.

25              THE COURT:  There are pending criminal charges?
```

1          MS. GREVE:  Yes, there are.

2          THE COURT:  So, what's -- he hasn't been convicted

3    of that, so how are you going to get into that?

4          MS. GREVE:  Mr. Nessel, I believe, opened the door

5    to that when he asked Frank Morgan why he was wearing an

6    orange jumpsuit and why he was incarcerated.  Mr. Morgan's

7    response was that he was incarcerated because his home

8    confinement was revoked, because he had gone to cash the

9    money that was on his card, and that home confinement had

10   told him that he was okay for him to go cash the money that

11   -- to cash that, but he had just went further than was --

12   than they allowed.

13        That is not why he's incarcerated.  He is incarcerated

14   because he has pending criminal charges.  He had been

15   allowed to serve part of that on home confinement.  The home

16   confinement was revoked because he breached the terms of his

17   home confinement.

18        THE COURT:  So, he was bonded out on home

19   confinement and it was revoked because he breached the

20   terms.  I think -- so, what's the pending charge?

21        MR. NESSEL:  Your Honor, if I may, I have a little

22   bit of insight.  It's a 20-B number, 20-B-92 in Logan County

23   Circuit Court.  As this Court knows, the "B" denotes a

24   bound-over case; ergo, he's not indicted.

25        THE COURT:  Can you guys take your masks off when

1    we're talking because I don't understand you.

2              MR. NESSEL:  Okay.  It's a 20-B-92 or 42 case

3    that's a bound-over case, which means Mr. Morgan has not

4    been indicted.  I'm not exactly sure exactly what the charge

5    is pending right now.  I know that -- I don't care if Ms.

6    Greve gets into the issue of violating the terms and

7    conditions of home confinement, as I brought it up

8    yesterday.  That's fair game.  But why he's incarcerated on

9    a bound-over case, not being indicted, and darn sure not

10   being convicted, I think that's off limits.

11             THE COURT:  Do you know what he is charged with?

12             MS. GREVE:  He is charged with possession with

13   intent to deliver fentanyl.  He is charged with possession

14   with intent to deliver methamphetamine.  And he's charged

15   with felon in possession of a firearm.

16             THE COURT:  Okay.  Now, tell me how it is that you

17   get past the fact that he got revoked, which he's already

18   testified to, and get to -- and get to cross examine him on

19   being charged but not convicted of that.

20             MS. GREVE:  Because the question that was asked of

21   him is why he was incarcerated and it's not because home

22   confinement was revoked.  He's incarcerated because he has

23   pending criminal charges.

24             THE COURT:  You know, I rarely do this, but I am

25   -- I will allow you to explore the revocation.  The hair

1    you're splitting there, Ms. Greve, unfortunately, I'm

2    extremely familiar with because of the criminal cases that I

3    do.

4        The answer is both of -- both are correct.  He's got

5    pending charges, so he's incarcerated, but he's incarcerated

6    at the moment because he violated his bond and -- however,

7    it opens the door to a lot of potentially prejudicial

8    material to get into what he's charged with, especially when

9    he hasn't been convicted of it.

10       So, I am -- I am going to exclude that under Rule 403

11   on the basis that its probative value is substantially

12   outweighed by the risk of unfair prejudice, delay and a

13   waste of time.

14          MS. GREVE:  And can I just proffer for the record

15   and the Court, as well, that this individual has testified

16   that he doesn't do meth?  He doesn't -- and I believe his

17   attorney is going to start bringing up fentanyl and I think

18   that the criminal charges for dealing methamphetamine and

19   dealing fentanyl are relevant.

20       And this is also evidence --

21          THE COURT:  Well, that's -- the criminal charges

22   prove nothing because they are just charges, number one.

23   And, number two, it's entirely possible to sell fentanyl and

24   not use it.  So, it is -- I will add to the list of 403

25   reasons that I'm excluding it, the potential for confusion

1    or misleading of a jury.  If you want to keep arguing, I can

2    add some more bases for my ruling.

3        MS. GREVE:  No.  I just wanted to note.  I just

4    wanted to note.

5        So, that's -- this reflects a law enforcement

6    interaction that he's had since this incident, but that is a

7    law enforcement interaction that you're ruling I can't get

8    into?

9        THE COURT:  Well, if the whole goal of that is to

10   get into what the charge is, no.  If you want to talk about

11   some sort of circumstance related to his arrest and not get

12   into the charge, that's fine.  I don't know where that's

13   going.  I'm not privy to the discovery, so I don't know

14   where you're going with that.  I don't know what's going to

15   come out of that.

16       MS. GREVE:  Well, if I ask this witness how much

17   time he's been out of jail from May of 2018 until now and

18   how much -- and in that period how much interaction he's had

19   with law enforcement, if he doesn't respond truthfully, can

20   I not bring up the arrests and not -- I don't have to say

21   that he was arrested.  I don't have to say that there was a

22   criminal charge.  But I do have a criminal complaint sworn

23   by a law enforcement officer and can I not bring that up?

24            THE COURT:  Mr. Nessel?

25            MR. NESSEL:  Your Honor, there's a tremendous

1    difference between interactions with police officers and

2    correctional officers.  If anybody in this room knows more

3    than anybody, it's probably me and Mr. Murray.  We've had

4    several cases together.

5         And correctional officers, it's a confined society

6    inside with cameras, so on and so forth.

7              THE COURT:  Well, hold on.  You're not talking

8    about correctional officers?

9              MS. GREVE:  No, Your Honor.

10              MR. NESSEL:  Well, he just -- his interactions

11    with them on the one time without bringing up the charges.

12    I mean, if his claim is that he's frightened of police

13    officers, rightfully so, I suppose.

14         But my point is, is that if Ms. Greve is going into

15    have you been confronted by police officers since April 20th

16    of '18, I think she can do that, but not going into any

17    charges.

18              THE COURT:  Well, I think that's what I just said.

19              MR. NESSEL:  You did.

20              THE COURT:  Yeah.  I don't know where this is

21    going exactly, but --

22              MR. NESSEL:  I don't either.

23              THE COURT:  I'll be prepared to put the brakes on

24    it if I think it's going somewhere it shouldn't.

25              MS. GREVE:  So, now the other is that plaintiff's

1    counsel elicited from Mr. Morgan that he pled guilty to

2    battery on a law enforcement officer because it was a

3    trade-off of -- I think it was represented that there were

4    15 other charges.

5            MR. NESSEL:  Ten other.

6            MS. GREVE:  The plea actually dealt with a

7    dismissal of claims from two cases.  I would like to

8    introduce all of the charges that were dismissed in exchange

9    for the plea.  The majority -- all of the charges except one

10   came from this incident.  The other charge was a 2019

11   incident, but it's part of the plea which has been made part

12   of the record and the door has been opened to that, Your

13   Honor.

14           MR. NESSEL:  They're dismissed.  Dismissed

15   charges.  The disposition of those charges is complete

16   dismissal.  Therefore, ergo, he was found not guilty of

17   them, Your Honor.

18       I do a lot of criminal law.  This Court is far more

19   advanced than I am in it.

20           THE COURT:  Well, I think she's right on this one.

21           MR. NESSEL:  Okay.

22           THE COURT:  I think you opened the door to that

23   pretty wide, actually.  So, I will let her explore that.

24           MR. NESSEL:  Yes, sir.

25           THE COURT:  And that's -- you know, yeah, I'll let

1    her explore that.

2              MR. NESSEL:  Okay.  Thank you, sir.

3              THE COURT:  Anything else?

4              MS. GREVE:  Well, when we're talking about his

5    felony convictions, this is a civil matter, and if I ask

6    this witness how many felony convictions he's had and he

7    doesn't remember, how far am I allowed to go in refreshing

8    his recollection?

9              THE COURT:  Well, you can refresh recollection

10   appropriately the same way any other witness would have

11   their recollection refreshed about any other document.

12             MS. GREVE:  So, is it going to be permissible for

13   me because I am on cross examination to actually cross

14   examine him and if he doesn't remember that he was an

15   escaped felon in Ohio that I can refresh his recollection

16   with that?

17             THE COURT:  You -- you can.

18             MS. GREVE:  Do I --

19             THE COURT:  If you do it appropriately, yes.

20   There's a right way to do that and a wrong way to do that.

21             MS. GREVE:  Well, this is cross exam, but I don't

22   -- given the Court's rulings, I don't want to state the

23   conviction in my question if that -- if you're ruling that

24   would be improper.

25             THE COURT:  That's exactly what I'm ruling.

1          MS. GREVE:  Okay.

2          THE COURT:  You show him the document.  You say,

3    "Does this refresh your recollection?"  If it does, it does.

4    If it doesn't, it doesn't.  And then, if it does, then you

5    can ask him, okay, what is that and you -- but until then,

6    until his recollection is refreshed, I don't think you get

7    to get into it.

8          MS. GREVE:  Okay.

9          THE COURT:  Now, one thing I want to ask, and I

10   haven't -- it's been awhile since I've encountered this.

11   Let me take a look at this real quick.

12         MS. GREVE:  Sorry.  There was one other matter

13   that I did want to get into and I want to make sure that

14   there is a --

15         THE COURT:  Go ahead.  I'm trying to find the

16   Rules of Evidence in this book.  Go ahead.

17         MS. GREVE:  After this complaint was filed or

18   around the time -- actually, around the time that this

19   complaint was filed there were -- a month before this

20   complaint was filed, there were domestic battery and assault

21   charges brought by Marissa Hudson against Frank Morgan.

22   The -- I would like to ask Mr. Morgan about the facts that

23   were underlying that assault and I do believe that that's

24   relevant.

25       I think the assault of his key witness here is an issue

1    that the jury can decide, if that was a credible occurrence

2    or not.  Now, of course, he can deny it happened, but I

3    would like to be able to present him with the facts.

4         MR. NESSEL:  That's clearly not admissible under

5    404(b).  That case was dismissed.

6         Again, I allowed Ms. Hudson to address it yesterday.  I

7    was kind of -- how do I say it?  I was kind of patient,

8    which is out of character for me, if you know me.  I think

9    that it -- considering it was dismissed and there's no

10   conviction of it and it's irrelevant to any assault on a

11   police officer or his claims in this case, I think it's

12   inadmissible, Your Honor, and overly prejudicial, as well.

13        THE COURT:  Refresh my recollection about what Ms.

14   Hudson's testimony was on that.

15        MS. GREVE:  Ms. Hudson said that she would have

16   never sworn out a complaint against Frank Morgan, that she

17   didn't remember him assaulting her.  Then, when I reminded

18   her that she was at the hospital, she said, yeah.  Well,

19   yeah.  Maybe.

20        THE COURT:  Let me take a look at a couple things

21   here.

22        MS. GREVE:  And the door is -- this was not

23   objected to at all by Mr. Nessel, whether it's

24   characteristic of him or not.

25        MR. NESSEL:  With one witness, as opposed to the

1    other.  That's the distinction with that.

2           MS. GREVE:  I think the argument that it's

3    prejudicial is gone since it's already out there in front of

4    the jury.  So, with respect to relevancy, I think whether or

5    not the plaintiff criminally assaulted and battered their

6    key witness, who the jury already knows had been financing

7    him with her prostitution money, I think that really

8    addresses credibility.

9           THE COURT:  Well, let me address that first.  I

10   think that the relationship between -- between Ms. Hudson

11   and Mr. Morgan is sort of central to the testimony in this

12   case.  Her testimony on it was equivocal at best and I think

13   I'm going to allow you to cross examine Mr. Morgan about it.

14   And I believe that it is not in this case a collateral

15   matter and, therefore, extrinsic evidence of it is

16   allowable.  So, I will allow that.

17      Now, with regard to criminal convictions, have you

18   complied with Rule 609(b) with regard to his past

19   convictions?

20          MS. GREVE:  I don't know what 609(b) requires me

21   to do, Your Honor.

22          THE COURT:  Well, I will read it to you.  Mr.

23   Nessel indicated that Mr. Morgan's felony conviction was

24   from 1999.  Do you know when he got -- what was the

25   conviction for?

```
1              MR. NESSEL:  One moment, Your Honor.  I have his
2    --
3              MS. GREVE:  His drug dealing.  That was the Gary,
4    Indiana charge.
5              MR. NESSEL:  It was actually with intent, sir.
6              THE COURT:  And how long was he incarcerated?
7              MR. NESSEL:  I'm not sure.
8              THE COURT:  Mr. Morgan?
9              MR. MORGAN:  Six years.
10             THE COURT:  Six years?  All right.  So, when did
11   you get out?
12             MR. MORGAN:  Out in '97.
13             THE COURT:  You got out in '97?
14             MR. MORGAN:  Yes.
15             THE COURT:  I thought you said that -- Mr. Nessel
16   said the conviction was in '99.
17             MR. MORGAN:  In '99?  The one in Ohio or Indiana?
18   I got out of prison in '97.  '92 to '97.
19             MR. NESSEL:  So, '92 was the conviction; '97 would
20   be when you were released?
21             MR. MORGAN:  Yes.
22             MR. NESSEL:  That's right.  You were like 20 years
23   old or 18.
24        There you go, Your Honor.  That clears everything up.
25             THE COURT:  All right.  So, Rule 609(b) says that
```

1    this subdivision (b) applies if more than ten years have

2    passed since the witness's conviction or release from

3    confinement for it, whichever is later.

4         Evidence of the conviction is admissible only if, one,

5    its probative value supported by specific facts and

6    circumstances substantially outweighs its prejudicial

7    effect; and, two, the proponent, that would be you, Ms.

8    Greve, gives an adverse party reasonable written notice of

9    the intent to use it so that the party has a fair

10   opportunity to contest its use.

11        Have you given Rule 609(b) notice?

12             MS. GREVE:  Not with -- not with felonies more

13   than ten years old, the more recent ones, Your Honor.

14             THE COURT:  All right.  Well, then anything more

15   than ten, years old is out.  You cannot even cross examine

16   him about it because you didn't give notice.

17             MS. GREVE:  Okay.

18             THE COURT:  So, what crimes are you specifically

19   intending to cross examine him about?

20             MS. GREVE:  The -- and I'm referring to an NCIC

21   report.  I'm not claiming to have personal knowledge of his

22   convictions.  The report reflects an escaped felon

23   conviction, March 2007; felony burglary convicted -- and

24   these are in Ohio -- March, 2007.  Oh, that's more than ten

25   years old.  Sorry.

1              THE COURT:  I was just thinking that.  Well, it
2    depends on when he got out of custody.
3              MS. GREVE:  Well, I don't know.  I don't know.
4              MR. NESSEL:  If he was at all in custody.  May I?
5    I'm reading 609 with you, Your Honor.
6        Your Honor, in all actuality, I mean, we live in 2020.
7    There's internet everywhere.  All Ms. Greve had to do was,
8    pursuant to Rule 9, advise me of it, do research, go to the
9    DOC in whatever state, whatever commonwealth, and determine
10   how long he was in.  That's her burden.  She didn't do it.
11             MS. GREVE:  Your Honor, there's no -- I mean --
12             MR. NESSEL:  That's where we are.
13             MS. GREVE:  Mr. Nessel had a PI run a list of
14   prior convictions.  They don't match everything in the NCIC.
15   But, in any event, if it's older than ten, I'm not fighting
16   about that.  I'm not fighting about that.
17             THE COURT:  Well, then --
18             MS. GREVE:  I don't know when he got out on the
19   2007 charges in Ohio.
20             THE COURT:  Then it's out.
21             MS. GREVE:  I'm sorry?
22             THE COURT:  Then it's out.  I mean, this is
23   something that should have been -- this is one of those
24   instances that I tell you about at the pretrial conference.
25   You all should have raised this issue and dealt with it long

1    before we were in trial.  We've had a jury sitting back

2    there a half an hour now and we're dealing with an issue

3    that we could have dealt with before trial, Ms. Greve.

4        So, have you got anything else you want to cross

5    examine him about that's not ten years old that's a felony?

6                MS. GREVE:  Or a crime of dishonesty?

7                THE COURT:  Or a crime of dishonesty.

8                MS. GREVE:  I do not think so.  Well, petit

9    larceny, is that a crime of dishonesty?  I think so.  Right?

10               THE COURT:  Petit larceny.

11               MR. NESSEL:  Your Honor, technically any crime is

12   a crime of dishonesty.

13               THE COURT:  Well, as you well know, Mr. Nessel,

14   there is a body of case law that sorts through what is a

15   crime of dishonesty under 609 and what's not.  It would have

16   been lovely to have some notice of this issue before now so

17   we weren't thrashing around with it.  So, what's your

18   position on it?

19               MR. NESSEL:  It's out.  That doesn't fall into the

20   parameters.  I was inflicting some sarcasm there about

21   crimes of dishonesty.

22               THE COURT:  If you haven't figured it out, I'm not

23   in the mood for sarcasm.

24               MR. NESSEL:  Yeah.  I do understand that.  Your

25   Honor, just to defend myself, you know --

1              THE COURT:  I'm not -- I'm not saying -- my

2      complaint here is that Ms. Greve didn't do her homework,

3      didn't make notices, didn't raise these issues when she

4      should have.

5              MR. NESSEL:  Yes, sir.

6              THE COURT:  Not complaining about you.  What I'm

7      at this point irritated with is the fact we've got a jury

8      sitting back there waiting and we're still dealing with

9      issues we could have dealt before trial.

10         So, if your position is that's not a crime of

11     dishonesty, I don't know if it's a crime of dishonesty or

12     not.  If I had an opportunity to look into it, I might find

13     that it is.  Under the circumstances, on a close call, Ms.

14     Greve is going to lose.

15         Nope.  You're not -- you're not going to cross examine

16     him on that.

17         Anything else we need to deal with before we bring the

18     jury in?

19             MR. NESSEL:  No, sir.

20             THE COURT:  All right.  Just to let you know, I

21     had a scheduling conflict this evening that got cleared up,

22     so we will be doing a charge conference at the close of the

23     evidence today.  Whether we finish early, we'll do it then.

24     If we're not finished with evidence by 5:00, we'll do it

25     shortly after 5:00.

1          (End of excerpt.  Further proceedings followed)

2

3

4    CERTIFICATION:

5         I, Ayme A. Cochran, Official Court Reporter, certify

6    that the foregoing is a correct transcript from the record

7    of proceedings in the matter of Frank Morgan,

8    Plaintiff/Counterclaim Defendant v. Logan County Commission,

9    et al., Defendants/Counterclaim Plaintiffs, Civil Action No.

10   2:18-cv-01450, as reported on July 29, 2020.

11

12   s/Ayme A. Cochran, RMR, CRR              January 5, 2022

13   Ayme A. Cochran, RMR, CRR                      DATE

14

15

16

17

18

19

20

21

22

23

24

25