```
                 IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                          AT CHARLESTON


_____x
                               :
FRANK MORGAN,                  :        Civil Action
                               :
               Plaintiff,      :        No.  2:18-cv-01450
                               :
v.                             :
                               :        Date:  March 4, 2024
OFFICER J. D. TINCHER, et al.,:
                               :
               Defendants.  :
_____x



                 TRANSCRIPT OF MOTIONS HEARING HELD
       BEFORE THE HONORABLE THOMAS E. JOHNSTON, CHIEF JUDGE
                  UNITED STATES DISTRICT COURT
                  IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Plaintiff:          KERRY A. NESSEL, ESQ.
                            The Nessel Law Firm
                            519-1/2 Eighth Street
                            Huntington, WV 25701

                            ABRAHAM J. SAAD, ESQ.
                            Saad Law Office
                            P. O. Box 1638
                            Huntington, WV 25717-1638

For the Defendants:         WENDY E. GREVE, ESQ.
                            Pullin Fowler Flanagan Brown &
                            Poe
                            901 Quarrier Street
                            Charleston, WV 25301

                            WILLIAM R. SLICER, ESQ.
                            Shuman Mccuskey & Slicer
                            P. O. Box 3953
                            Charleston, WV 25339

Court Reporter:             Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.
```

1          PROCEEDINGS had before The Honorable Thomas E.

2    Johnston, Chief Judge, United States District Court,

3    Southern District of West Virginia, in Charleston, West

4    Virginia, on March 4, 2024, at 1:00 p.m., as follows:

5          COURTROOM DEPUTY CLERK:  The matter before the

6    Court is *Frank Morgan versus Officer Tucker, et al.,* civil

7    action number 2:18-cv-01450, scheduled for a motions

8    hearing.

9          THE COURT:  Good afternoon.  Will counsel please

10   note their appearances?

11         MR. NESSEL:  Good afternoon, Your Honor.  Kerry A.

12   Nessel for the plaintiff, Frank Morgan.

13         MR. SAAD:  Abraham J. Saad for the plaintiff,

14   Frank Morgan.

15         MS. GREVE:  Wendy Greve and Will Slicer for the

16   defendant, Tincher.

17         THE COURT:  Mr. Slicer, I don't recall you having

18   the pleasure of being here for the trial almost four years

19   ago.  Are you -- what capacity do you appear in today?

20         MR. SLICER:  I will be taking over the case for a

21   discovery period and the trial.

22         THE COURT:  All right.  So, very well.

23       All right.  We are here today on -- in the wake of the

24   Fourth Circuit's decision on plaintiff's renewed motion for

25   sanctions.

1          Mr. Nessel, I will hear from you, but my first question

2    is how does Rule 11 apply in this situation?

3               MR. NESSEL:  Well, Your Honor, just the overall

4    misconduct.

5               THE COURT:  Well, that's not how Rule 11 works.

6    Rule 11 has to do with signing certain things.  And what is

7    it that Ms. Greve signed here that Rule 11 applies to?

8               MR. NESSEL:  She signed a Certificate of Service

9    denoting discovery responses.  She --

10              THE COURT:  Have you read Rule 11?

11              MR. NESSEL:  Yeah.  I've got it right in front of

12   me.  I understand what it states, Your Honor.

13              THE COURT:  Rule 11 says it doesn't apply to

14   discovery responses.

15              MR. NESSEL:  Okay.

16              THE COURT:  So, how does Rule 11 apply in this

17   situation?

18              MR. NESSEL:  Okay.  Well, nix that, Your Honor.

19   We'll get rid of Rule 11 and focus on Rule 37.

20              THE COURT:  All right.  Good.  Save us some time.

21              MR. NESSEL:  If that's where you were going to.

22   And I understand.

23              THE COURT:  Well, I mean, the rule says what it

24   says.

25              MR. NESSEL:  I understand, sir, yes.

1          THE COURT:  All right.  So, Rule 37.

2          MR. NESSEL:  Yes, Your Honor.  Do you want me to

3    continue?

4          THE COURT:  Please proceed.

5          MR. NESSEL:  Your Honor, I believe it's been

6    briefed thoroughly by and through my motions, as well as my

7    replies, so on and so forth, that were all before this

8    Court, the first one of which was the second -- I guess it

9    would be the second to last day of the trial in June --

10   excuse me, July 30th, 2020.  The day before this Court

11   informed me to file what I needed to file in regard to the

12   nondisclosure and Rule 26 violation.

13        The nondisclosure, of course, was regarding a *Travis*

14   *Fortune* matter.  I got up early that morning, as I always

15   do, at I think 6:22 a.m., prior to arriving --

16        THE COURT:  Well, okay.  Let me -- let me -- let

17   me back up.

18        MR. NESSEL:  Yeah.

19        THE COURT:  I've read your briefing.  I've read

20   their response.  What's your response to their arguments

21   regarding the Rule 37 motion?

22        MR. NESSEL:  Well, I filed a reply to that

23   response and I believe it speaks for itself, as well.  The

24   Court's -- I filed it.  It was timely filed.

25        First of all, it says -- well, would you like me to go

1    through it, or is the Court familiar with it?

2         THE COURT:  I'm familiar with it, but they raise

3    some arguments that suggest that Rule 37 sanctions aren't

4    available and I just want to hear, here and now, what your

5    response is to that.

6         MR. NESSEL:  Okay.  Well, Your Honor, I believe,

7    and I stated before, that they are.  First of all, they

8    address me not complying with Rule 37.  As I stated, this

9    Court ordered me to file something.  I did so.  So,

10   therefore, that issue is covered.

11       And basically, Your Honor, let me pull Rule 37 out of

12   my -- failure to disclose to supplement an earlier response

13   or to admit, so on and so forth, Rule 37.

14       Your Honor, they failed to disclose things.  The Fourth

15   Circuit found that to be misconduct.  They relied on Rule

16   26.  Rule 26 states it is an ongoing process.  You need to

17   file things.  You need to supplement things, most

18   importantly.  That was not done.  That caused Mr. Saad and I

19   and our respective offices to have to spend an exorbitant

20   amount of time.

21       So, Rule 37 governs it due to the fact that a failure

22   to disclose or supplement under Rule -- that rule under

23   (c)(1), but it specifically addresses Rule 26(a), which is

24   what's applicable here and -- 26(e) is the one, Your Honor,

25   and it includes attorney's fees, expenses, so on and so

1    forth under that rule.  That's exactly what we have here.

2         In regard to their response, in my reply I specifically

3    state that, yes, misconduct did occur due to Rule 26 and the

4    Fourth Circuit found the same.  That was their ruling.  I'm

5    relying on not only the rule, but what the Fourth Circuit

6    basically ordered.  So, that's why we're here today in that

7    regard, Your Honor.

8         And I believe that sanctions are in order due to

9    attorney's fees and expenses expended because, again, we

10   spent an exorbitant amount of time -- pretty much spent an

11   exorbitant amount of time and resources on something that

12   should have been given to us prior to the trial.  I do not

13   need to belabor that point because that is the main point.

14        So, that's where we rest, Your Honor.  I'll respond to

15   Ms. Greve, should I -- should need be.

16              THE COURT:  All right.  Ms. Greve?

17              MR. NESSEL:  Thank you, sir.

18              MS. GREVE:  Thank you, Your Honor.  The -- we

19   raised procedural deficiencies with the plaintiff's motion,

20   but if I may go forward without leaving any procedural

21   arguments that we have, just with the substance.

22        The first is perhaps the most disturbing professionally

23   to me and that is that plaintiffs have filed a request with

24   this Court that it order Rule 11 sanctions against counsel

25   for what they term as suborning perjury.

1          THE COURT:  Well, I think -- I think Rule 11 --

2     this is a discovery matter and, as I pointed out to Mr.

3     Nessel, I don't think Rule 11 applies in this situation.

4          MS. GREVE:  Your Honor, we completely agree with

5     you.  With respect to the discovery issue, plaintiff's

6     counsel added an argument in this motion which they term a

7     renewed motion for sanctions, but what they've done is

8     they've added a count in there arguing that the defendant,

9     Tincher, perjured himself during the underlying trial.  That

10    was not any -- that was not part of any of the briefing

11    prior to this motion and --

12         THE COURT:  It was suggested by the Fourth Circuit

13    opinion though.

14         MS. GREVE:  Correct.  And then plaintiff's counsel

15    represented in his motion that I suborned perjury and --

16         THE COURT:  I think that can be implied from the

17    Fourth Circuit opinion.

18         MS. GREVE:  I agree.  Now, what the Fourth Circuit

19    didn't have, but what this Court does have, is the

20    definition of perjury, because it wasn't briefed before the

21    Fourth Circuit, and suborning perjury.  That also wasn't

22    briefed before the Fourth Circuit and it wasn't -- also was

23    not part of the briefing or the argument.

24         It is what -- what we have in plaintiff's counsels'

25    motion is just what he took out of the order without any law

1    and I think we need to start with the law.

2        First of all, what is perjury?  The argument the

3    defendant, Tincher, lied on the stand with respect to *Meade*.

4    In order for there to be perjury you have to have a willful

5    -- I apologize, Your Honor.  The statement --

6            THE COURT:  Well, I'm going to stop you right

7    there because I know what perjury is and I know what

8    suborning perjury is and the fact of the matter is the

9    Fourth Circuit also suggested that there should be a period

10   of discovery and, frankly, I think that is a topic that is

11   ripe for that period of discovery.  What did Tincher know?

12   What did he not know?  And what did you do?  And what did

13   you -- and what did you know before he testified?  All, I

14   think, all are subjects that are ripe for discovery.

15           MS. GREVE:  Thank you, Your Honor.  In order for

16   there to be suborning perjury the individual attorney has to

17   actually procure it.  There are no allegations in the motion

18   before this Court that there were any statements made by

19   Defendant Tincher on the stand during trial in response to

20   any questioning by me.  And I would also like to note for --

21   with reference to the record the *Meade* case, which is also

22   pending before this Court, and is at 2:19-cv-00647.  At ECF

23   40, the Court will note that Lonnie Simmons withdrew as

24   counsel.  I am an officer of this Court and I will represent

25   to this Court that Lonnie Simmons, in May of 2020, said that

1    he was going to be withdrawing the entire *Meade* suit.  He

2    withdrew as counsel just prior to the trial in this case

3    because *Meade* would not agree to voluntarily dismiss.  In

4    September of 2020 Tony Meade voluntarily dismissed the

5    remainder of his case.

6        I would respectfully request that this Court deny

7    plaintiff's motion directed to me for suborning perjury

8    because not -- even if there -- there is no factual

9    allegations in plaintiff's motion that would support the

10   legal definition of suborning or perjuring, and we believe

11   that the facts that are part of a public record here

12   indicate that Mr. -- or then Deputy Tincher was aware that

13   plaintiff's counsel, Lonnie Simmons, was withdrawing and did

14   withdraw.

15           THE COURT:  Well, we'll see.

16           MS. GREVE:  Okay.  Thank you, Your Honor.

17       And I will move on then to the --

18           THE COURT:  And I'm not striking anything.

19           MS. GREVE:  Okay.  The -- then I will move on to

20   the Rule 37 argument.  The -- I'd note that the Court

21   actually issued two orders.  One is at ECF 204; the other

22   was addressing the Rule 60(b).  Plaintiff's counsel filed

23   two motions, which explains the two orders.

24       During the trial plaintiff's counsel asked this Court

25   to award sanctions for the failure to supplement discovery

1    specific to the *Fortune* complaint.  As this Court's aware, I

2    did not supplement any discovery at all because I believed

3    that we didn't have to.  Now, that was absolutely incorrect,

4    but it was a legitimate belief that I held that was founded

5    in the legal argument at the time I failed to supplement the

6    discovery.  It wasn't a withholding of the *Fortune*

7    complaint, which was a public record.  It wasn't withholding

8    that complaint.

9              THE COURT:  It doesn't matter if it's a public

10   record.  It's still subject -- you were still subject to

11   discovery obligations.  This business that it's a public

12   record is a total red herring and is not going to get you

13   off the hook for this.

14             MS. GREVE:  Thank you, Your Honor.

15        So --

16             THE COURT:  You're welcome.  And don't talk back

17   to me.

18             MS. GREVE:  I apologize, Your Honor.  That was not

19   my intent.

20        The failure to supplement was not an intentional

21   withholding of one piece of evidence.  It was a failure to

22   supplement based on a mistaken but truly held belief in what

23   the law was and how it was to be applied and I am not here

24   to say that I was right.  I am here to say that I believed

25   that I was right and I had a legal basis for that belief and

1    I had a factual basis for that belief.

2        This Court, in its order under 204, which was not

3    appealed, this Court held that the plaintiff engaged in

4    misconduct in violating the Court's order requiring it to

5    issue discovery requests within the time frame.  I failed to

6    supplement discovery responses to discovery that I didn't

7    have to answer.

8        The Fourth Circuit in its opinion held that if I answer

9    them I had to affirmatively raise the timeliness objection.

10    I did not affirmatively raise the timeliness objection.

11    That does not negate my good faith basis in my legal

12    argument to explain why none of the discovery was

13    supplemented, Your Honor.

14        With regard to the application of Rule 37 sanctions

15    and/or fees, I'm sure the Court is fully aware that the

16    Fourth Circuit has a -- well, they have a four-part test and

17    whether or not the non-complying party acted in bad faith is

18    a critical element of that, Your Honor.  The Fourth Circuit

19    did not find that the misconduct for a Rule 60 analysis was

20    intentional misconduct.  It specifically did not find that

21    it was intentional.  It also did not find that it was

22    unintentional.

23        But this Court's prior orders and this Court's dealing

24    with the undersigned, this Court certainly has a record

25    before it to support the finding that none of defense

1    counsel's conduct was in bad faith and intentional

2    misconduct.

3         The briefing before this Court and consistent with this

4    Court's orders establishes that there was a legitimate legal

5    argument for defense counsel's position.  The fact that I

6    was determined to be wrong is not tantamount to a finding

7    that I acted in bad faith, Your Honor.  That is one of a

8    multitude of elements of the four elements that the Fourth

9    Circuit does review with the application of Rule 37.

10        The -- the request for attorney's fees is not fully set

11   forth in plaintiff's counsels' brief.  Plaintiff's counsel

12   has just said they have -- they have exorbitant attorney's

13   fees.  I believe the standard is actually reasonable

14   attorney's fees, but it also has to be directly related to

15   work -- well, Your Honor knows what the test is.

16        The Court in its discretion can refuse to award

17   sanctions.  This Court, when faced with the issue before,

18   had determined that defense counsel had a duty to supplement

19   and failed to meet that duty, that plaintiff's counsel had a

20   duty to comply with this Court's order, and plaintiff's

21   counsel failed to comply with that duty.  And in the order

22   at ECF 204 the finding was that there were no sanctions to

23   be awarded.

24        This is no different now than it was then.  Plaintiff's

25   counsel is going to receive a new trial and plaintiff can

1    try their case.  There was no intentionality and there was

2    no bad faith, Your Honor, and we respectfully request that

3    this Court deny the plaintiff's motion.  Thank you.

4        THE COURT:  One thing you didn't mention is your

5    request for attorney's fees against plaintiff's counsel for

6    filing this motion, which I have to say in my 18 years as a

7    judge, wins the chutzpah prize, and that will be denied.

8        The -- Mr. Nessel, do you have anything to add?

9        MR. NESSEL:  Briefly, Your Honor.  Basically just

10   a brief response or reply to her.  She keeps harping on the

11   fact that we were nine days late in filing discovery

12   requests.  Once she answered them, she's in for Rule 26.  I

13   didn't say that.  Those three wise people in Richmond stated

14   that.  So, that's not -- that's not my standard.  My

15   argument, but they affirmed that, or they agreed with me.

16       An intentional non-supplemental that she, Ms. Greve,

17   stated there is no factual or legal bases for her to turn

18   the *Fortune* stuff over to me.  By the way, she kept focusing

19   on me, which is not really what this is about.  We knew

20   about me.  That's not going to cut it either.  So, there's

21   no argument there.

22       Another thing about Rule 37, Your Honor, is the

23   deterrence that makes sure these things don't happen again.

24   I think that the Court stated it very wise on July 29th.

25   "Don't give me that look because you have a duty to

1    supplement.  Okay?"  The Court, this is you, Your Honor.

2    You stated this.  "If he" --

3                    THE COURT:  Oh, it sounds like me.

4                    MR. NESSEL:  I beg your pardon?

5                    THE COURT:  That sounds like me.

6                    MR. NESSEL:  Yeah.  As I say a lot of times, I

7    don't remember saying that, but it sounds like something I'd

8    say.

9        You stated, "Don't give me that look because you have a

10   duty to supplement.  Okay?"  And you continued, Your Honor.

11   "If he", meaning Mr. Nessel, "didn't know about this *Fortune*

12   matter, he couldn't put it in the notes.  So, that doesn't

13   get you anywhere.  This may not go well for you if he", Mr.

14   Nessel, "can demonstrate that he requested this information

15   and that you did not provide it.  You're on notice of that."

16   Those are these Court's rules.

17       Your Honor, I know this Court pretty well.  I've only

18   had one trial in front of you.  I know you don't speak

19   lightly when you speak.  I think your directives, they need

20   to be taken seriously.  What you stated on July 29th of 2020

21   has come to fruition.  I have proven that.  And it shouldn't

22   go well for her.  That's why I filed this renewed motion.

23       And that's the whole point, is sanctions or, when the

24   Court implied on July 29th of 2020 and what the Fourth

25   Circuit affirmed or, excuse me, reversed and stated that on

1    July -- January 3rd of this year that, yes, misconduct under

2    Rule 60(b)(3) did occur.  I've stated this from the

3    beginning.  I believe I stated it in that motion on the

4    early morning of July 30th.

5        I could possibly, possibly forgive Ms. Greve if she did

6    not represent Tincher in the *Fortune* matter.  She did.  She

7    had filed a responsive pleading.  So, she was very well

8    aware of this.

9        And if the Court can recall, I kind of made a stink

10   about *Meade* not knowing that the *Meade* lawsuit against

11   Tincher was filed.  He alludes to it briefly in his

12   discovery responses earlier, and I note that in my brief,

13   but doesn't supplement like, hey, a lawsuit was filed

14   against him.  Regardless of the outcome of that, that's

15   still discoverable information.  I think the Court kind of

16   chastised her on that on our phone conference right before

17   the trial.

18       But even when armed with that in my arguments and my

19   disdain for it she failed to consider to disclose to me

20   under Rule 26(e), which she has to give me, which is this

21   lawsuit was filed against Tincher.

22       I had this great outline I did for the Fourth Circuit,

23   Your Honor.  Kind of relied on it.  It's just a timeline of

24   what's going down and how this went down.  There were like

25   three months between Tincher's lawsuit and that day I found

```
 1    out.
 2         And just to refresh the Court's memory, we had rested
 3    --
 4              THE COURT:  You mean Fortune.
 5              MR. NESSEL:  I beg your pardon?
 6              THE COURT:  You mean Fortune's lawsuit.
 7              MR. NESSEL:  The Fortune lawsuit, yes, sir, is
 8    that we were advised of it by Fortune's counsel, who just
 9    happened to be here that day.  Had I not known about it or
10    had he not been here, we probably never would have known
11    about it.
12         But that's what we're talking about here, Your Honor.
13    Again, I'm sorry to kind of drag it out.
14         Ms. Greve also stated we didn't rely on, quote, "the
15    law".  Well, yeah, we did.  We relied on the Rules of Civil
16    Procedure.
17              THE COURT:  Mr. Nessel, I really just have one
18    question for you.
19              MR. NESSEL:  Yes, sir.
20              THE COURT:  You mentioned in your briefing that
21    Ms. Greve has been sanctioned in other cases, but you didn't
22    cite any of those.  Do you have evidence of that?
23              MR. NESSEL:  I believe one was in Boyd County,
24    Your Honor.  Mr. Saad may be able, if that's okay with the
25    Court.
```

1          THE COURT:  Well, here's the thing.

2          MR. NESSEL:  Yes, sir.

3          THE COURT:  And here's what I'm going to do with

4    this.  We need to get this case on track.  The Fourth

5    Circuit suggested a period of discovery.  I think we need a

6    period of discovery to flush this out, including that issue,

7    as well as what Ms. Greve and Mr. Tincher knew and what they

8    intended, and I think that is going to have to be the

9    subject of discovery.

10        I'm going to take this under advisement and allow that

11   discovery to occur.

12        In the meantime, Mr. Nessel, I want you to prepare a --

13   an accounting of your time and hourly rate and Mr. Saad's,

14   too, if he -- I don't know to what extent he was involved in

15   the appeal or not, but for plaintiff's counsel, I want a --

16   an accounting of your time and hourly rate for everything

17   flowing from this discovery failure, as I'll call it for the

18   time being, and if you all want to have discovery about

19   that, you can do that, as well.  I think I need more of a

20   record to decide what I'm going to do here.

21        You can be seated.

22          MR. NESSEL:  Oh, yes, sir.  Thank you.

23          THE COURT:  So -- now, having said all that, my

24   first question, the one question I have is how much time do

25   you all think you need for this discovery given that the

1    case is otherwise pretty well discovered?

2        And I guess that's a question for Mr. Slicer on the

3    defense side.

4           MR. SLICER:  Your Honor, it seems to me that the

5    individuals that have knowledge concerning this would be Mr.

6    Simmons, Ms. Greve, Mr. Tincher because, as I understand

7    what the Court is interested in, it has to do with the *Meade*

8    case and representations that were made about that during

9    the trial.

10          THE COURT:  And *Fortune*.

11          MR. SLICER:  And the *Fortune* case.  So, just at

12   this moment, those are the only three that I can think of

13   that we would need discovery from and/or affidavits.  So,

14   three -- three months, two months.

15          THE COURT:  Two months?

16          MR. NESSEL:  Two months would work, Your Honor.  I

17   have a third deposition of Mr. Tincher in the *Daniels*

18   matter.  And I did touch on this.  I know Mr. Slicer may

19   want to, you know, it's his client, but delve into it a

20   little bit more by and through the same.  I do have an

21   excessive force expert I would disclose, if the Court

22   permits me to do so.

23          THE COURT:  Why would -- why would I allow you to

24   disclose an expert at this juncture?  We've already tried

25   this case.

```
 1                MR. NESSEL:  I know.  I just said if the Court

 2     would allow me to do so.  Apparently, you're not.  So --

 3                THE COURT:  Well, it sounds like I'm leaning that

 4     way.

 5                MR. NESSEL:  I can read you pretty well.

 6                THE COURT:  All right.  So, we'll give it -- I'm

 7     going to build out a scheduling order with 60 days of

 8     discovery and a trial date.

 9          Now, having said that, here's what I think you all

10     should strongly consider.

11          First of all -- please sit down, Mr. Nessel.

12          First of all, I think the defense can expect, probably

13     expect sanctions, and while those sanctions are very likely

14     to be monetary and are very likely to be substantial, they

15     are not -- monetary sanctions are not the only sanctions

16     available to me.  So, you all should give that careful

17     consideration and further should give settlement careful

18     consideration to avoid those issues.  I hope you're hearing

19     me.

20          Mr. Nessel --

21                MR. NESSEL:  Your Honor.

22                THE COURT:  You also should consider very

23     carefully settling this case.  I remember the settlement

24     negotiations before this trial.  Your demand was outrageous

25     and not reasonable.  And now that we've had a trial of this
```

1    case, I've seen the witnesses, including the *Meade* matter,

2    and I found your client and his witnesses to be not

3    particularly credible; not my decision, it's the jury's,

4    obviously.  I didn't find them to be particularly credible.

5    You were able to present the *Meade* matter and you still got

6    a defense verdict.  If that doesn't make you reasonable,

7    there's no way to make you reasonable.

8             MR. NESSEL:  I'll be reasonable.

9             THE COURT:  So, you need to think about settling

10   this case, too.

11            MR. NESSEL:  I understand, Your Honor.

12            THE COURT:  Both sides have huge incentives at

13   this point to settle this case for a reasonable amount.  Is

14   everybody hearing me?

15            MR. NESSEL:  I hear you.  I made a demand the day

16   we had our scheduling conference three weeks, three days

17   ago.  I made it and Mr. Slicer responded.  So, there's

18   negotiations going on.  I didn't -- your words didn't fall

19   on deaf ears, Your Honor.

20            THE COURT:  All right.  Very good.  Well, this is

21   going to be a potentially unpleasant business if it doesn't

22   get resolved.  So, take that for what you will.

23      Mr. Slicer.

24            MR. SLICER:  Your Honor, with the Court's

25   indulgence, I am out the last two weeks of April.  So, if we

```
1    can go a little beyond 60 days.

2              THE COURT:  All right.  That's fine.  Three months

3    is not unreasonable.

4              MR. SLICER:  Okay, thank you.

5              THE COURT:  That's fine.  So, today is March 4th.

6    We'll set a discovery cutoff around June 4th and we'll build

7    out the scheduling order from there.  That probably puts us

8    at trial in October but, hopefully, hopefully, not

9    necessary.

10        All right.  Anything else we need to take up today?

11             MR. NESSEL:  No, Your Honor.

12             MS. GREVE:  No, Your Honor.

13             THE COURT:  And, Ms. Greve, are you going to be

14   withdrawing from the case as counsel?

15             MS. GREVE:  Yes.  I needed the hearing today in

16   order to resolve this issue before I thought I would be

17   permitted to withdraw and for relief to come in.

18             THE COURT:  Have you noted an appearance, Mr.

19   Slicer?

20             MR. SLICER:  Yes, sir.

21             MS. GREVE:  Yes.

22             THE COURT:  I thought you had.

23        All right.  If you'll go ahead and file your motion to

24   withdraw, we will act on that.

25             MS. GREVE:  Okay.  Thank you, Your Honor.
```

1          THE COURT:  Thank you.

2          (Proceedings concluded at 1:28 p.m., March 4, 2024.)

3

4

5     CERTIFICATION:

6          I, Ayme A. Cochran, Official Court Reporter, certify

7     that the foregoing is a correct transcript from the record

8     of proceedings in the above-entitled matters as reported on

9     March 4, 2024.

10

11    s/Ayme A. Cochran, RMR, CRR                    March 6, 2024

12    Ayme A. Cochran, RMR, CRR                         DATE

13

14

15

16

17

18

19

20

21

22

23

24

25