**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

FRANK MORGAN,

                Plaintiff,

v.                                    CIVIL ACTION NO.  2:18-cv-01450

OFFICER J.D. TINCHER,
*individually and in his official capacity,* et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Frank Morgan's ("Plaintiff") Renewed Motion for Rule 11 and Rule 37 Sanctions.[1] (ECF No. 219.)  For the reasons discussed more fully below, the Court **GRANTS** Plaintiff's Motion.

*I.      BACKGROUND*

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 and West Virginia state law, alleging that he suffered serious injuries after he was beaten by police officers in Logan County, West Virginia, on April 20, 2018.  (ECF No. 1 at 1, 4.)  After a four–day trial, a jury returned a

---

[1] As Plaintiff conceded at the motion hearing held on March 4, 2024, (ECF No. 232), Federal Rule of Civil Procedure 11 is inapplicable here.  (ECF No. 237 at 3:16–25.)  Rule 11 specifically governs the signing of documents, representations to the court, and provides sanctions for making improper representations to the court.  Further, Rule 11 plainly states "[t]his rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d).  Therefore, the Court construes Plaintiff's Motion as one solely for Rule 37 sanctions.

verdict for Defendants Officer J.D. Tincher ("Tincher") and Kevin Conley and found they were not liable to Plaintiff for any of his remaining claims.  (ECF No. 190.)

Several months before trial began, but ten days after the deadline imposed by the applicable scheduling order, (ECF No. 21), Plaintiff served Tincher with discovery requests, (ECF No. 52). In the interrogatories, Plaintiff asked Tincher to disclose any allegation that had been made against Tincher "by any person" while he was an employee with the police department, as well as "all litigation," excluding domestic matters, in which Tincher was a named party, including "the allegations, the nature of the case and the outcome."  (ECF No. 180 at 3–4.)  Additionally, Plaintiff requested any documents relating to "any lawsuits" against Tincher or "claims of excessive physical abuse" or "physical assault" while Tincher was employed by the police department.  (*Id.* at 4.)

Tincher responded to the interrogatories and other discovery requests, without objecting to the untimeliness of Plaintiff's requests.  In Tincher's response, he stated that on September 20, 2017, an individual named Tony Meade claimed that Tincher and other deputy sheriffs used "excessive force against him."  (*Id.* at 3.)  Plaintiff alleges that while Tincher mentions Mr. Meade, he does not mention that he is a defendant in Mr. Meade's civil lawsuit that was filed on September 9, 2019 ("*Meade* lawsuit").[2]  (*Id.* at 4.)  Plaintiff's counsel alleges that he learned, twenty days before trial, of Mr. Meade's lawsuit against Tincher "by happenstance."  (ECF No. 145 at 6.)  This is despite the fact that Tincher was represented by the same counsel, Ms. Wendy Greves, in both the *Morgan* and *Meade* lawsuits.  (ECF No. 145 at 6.)

---

[2] In *Meade v. Mayes*, No. 2:19-cv-00647 (S.D. W. Va. filed Sept. 9, 2019), Plaintiff Tony Meade filed a § 1983 lawsuit against Tincher for his actions as a law enforcement officer.

During trial, Plaintiff's counsel questioned Tincher about the *Meade* lawsuit.[3]  During the questioning, Plaintiff's counsel asked Tincher about whether he was interviewed by the police chief "'regarding any malfeasance during the time period at issue.'"  (ECF No. 219 at 3 (quoting *Morgan v. Tincher*, 90 F.4th 172, 175 (4th Cir. 2024)).)  Tincher responded, "'I don't believe so, sir. I'm not a trouble maker.'"  (*Id.*)  Plaintiff's counsel then asked Tincher if Mr. Meade had a lawsuit pending against him.  (*Id.*)  Tincher responded that he did not and continued to answer that he was not a defendant in a lawsuit.  (*Id.*)

Later during the trial, on July 29, 2020, Plaintiff's counsel learned of an additional undisclosed civil lawsuit pending against Tincher—*Fortune v. City of Logan*, No. 2:20-cv-00339 (S.D. W. Va. filed May 14, 2020) ("*Fortune* lawsuit").[4]  (ECF No. 180 at 1–2.)  Plaintiff alleges that this action was never supplemented by Tincher during discovery, despite the relevant request. (*Id.*)  Instead, Plaintiff alleges that he learned of this additional lawsuit from the attorney representing the plaintiff in the *Fortune* lawsuit.  (*Id.* at 2.)  Notably, Tincher was represented by Ms. Greves in the *Fortune* lawsuit as well.  (ECF No. 202 at 2.)  In fact, Plaintiff argued that Ms. Greves was well aware of the *Fortune* lawsuit because she filed a motion to dismiss that case on July 17, 2020.  (*Id.*)

As the Fourth Circuit observed, "[n]ot only did the *Fortune* lawsuit represent a third claim of excessive force against Officer Tincher, but the allegations regarding Tincher's actions against Fortune were strikingly similar to Morgan's own allegations against Tincher."  *Morgan*, 90 F.4th at 180.  In *Fortune*, Plaintiff Travis Fortune ("Fortune") alleged he was walking on the railroad

---

[3] Citing Federal Rule of Evidence 404(b), Plaintiff filed a notice of intent to introduce at trial the "prior bad act" evidence from the *Meade* lawsuit.  (ECF No. 145.)

[4] The parties in the case entered into a settlement agreement in December 2021, and the case was dismissed.  *Fortune*, No. 2:20-cv-00339, (ECF No. 66.)

tracks with another individual in downtown Logan, West Virginia, when they were stopped by Tincher. (ECF No. 180–1 at 2–3, ¶ 10.) Tincher told Fortune that there was a report of someone overdosing on heroin and ordered the men to drop their backpacks. (*Id.* at 3, ¶ 11.) Tincher then searched the backpacks, found drug paraphernalia, and became angry at Fortune's response to Tincher's questioning. (*Id.* ¶ 16.) Fortune further alleged that Tincher struck Fortune in the face, without warning or provocation, and then got on top of him and beat him until he was bloody. (*Id.* at 3, ¶¶ 18–19.) After being taken to the station, Fortune alleged Tincher beat him while he was handcuffed. (*Id.* at 4, ¶ 28.) Fortune alleged his injuries were so severe that he required multiple surgeries to screw his jaw together. (*Id.* at 6–7, ¶¶ 44–48.)

During trial, Plaintiff's counsel alerted this Court about the *Fortune* lawsuit. (ECF No. 202.) Plaintiff's counsel argued that, under Federal Rule of Civil Procedure 26, Tincher was required to provide the information about the *Fortune* lawsuit to them. (*Id.*) When questioned by this Court about her failure to disclose the *Fortune* lawsuit, Ms. Greves responded, "[Tincher] has been sued after [the *Morgan*] lawsuit. I don't understand – for an incident that occurred after the lawsuit. I don't understand." (*Id.* at 3:07–09.) This Court advised Ms. Greves that she had a duty to supplement and put her on notice that if the Court were to find she violated her discovery duty, it would not bode well for her. (*Id.* at 3:20–25, 5:06–16.) The Court continued with the trial, waiting to decide the discovery violation matter at a later time. (*Id.* at 3:22–25.)

On July 30, 2020, on the second to last day of trial, Plaintiff filed a Motion for Rule 11 Sanctions for Tincher's failure to disclose the *Fortune* lawsuit,[5] in violation of Federal Rule of

---

[5] In his motion, Plaintiff also appeared to seek sanctions for Tincher's failure to disclose the *Meade* lawsuit against Tincher. However, Plaintiff called Meade as a witness during the trial of this case and appeared to have suffered no prejudice from this alleged failure to disclose. Accordingly, the Court did not impose sanctions for Tincher's failure to disclose the *Meade* lawsuit and focused solely on the *Fortune* lawsuit. (ECF No. 204.)

Civil Procedure 26.[6]  (ECF No. 180.)  In that motion, Plaintiff argued that Tincher's counsel's violation of the Federal Rules precluded him from being able to file a Notice of Rule 404(b) evidence regarding Tincher.  (ECF No. 180 at 7.)  As a result, Plaintiff requested that in addition to Rule 11 sanctions, the Court allow the *Fortune* lawsuit to be addressed at trial.  (*Id.*)  Ms. Greves argued that her failure to disclose the *Fortune* lawsuit was "simple oversight and harmless."  (ECF No. 183 at 4.)  This Court ultimately denied Plaintiff's motion.  (ECF No. 204.)  In doing so, the Court held that although Tincher had a duty to supplement the responses to his interrogatories, because Plaintiff served his interrogatories after the close of discovery, Plaintiff's request was improper.  (*Id.* at 3–5.)

On September 10, 2020, Plaintiff filed a Rule 60(b) Motion for Relief from Judgment. (ECF No. 198.)  Specifically, Plaintiff moved for this Court to vacate the July 31, 2020, jury verdict against him because Tincher's failure to disclose the *Fortune* lawsuit during discovery prevented Plaintiff from introducing it at trial.  (*Id.*)  This Court denied Plaintiff's motion, *Morgan v. Logan County Commission*¸ No. 2:18-cv-01450, 2021 WL 4342734 (S.D. W. Va. Sept. 23, 2021), and the Fourth Circuit reversed that decision, *Morgan*, 90 F.4th 172.

Following the decision by the Fourth Circuit, on January 15, 2024, Plaintiff filed his Renewed Motion for Rule 11 and Rule 37 Sanctions.  (ECF No. 219.)  Tincher timely responded, (ECF No. 224), and Plaintiff timely replied, (ECF No. 225).  Following Court orders, Plaintiff filed a supplemental reply on March 27, 2024, (ECF No. 242).  As such, this motion is fully briefed and ripe for adjudication.[7]

---

[6] The Court found that Rule 11 was inapplicable, and instead, construed the motion as one brought under Rule 37(c)(1). *Morgan v. Logan County Commission*, No. 2:18-cv-01450, 2021 WL 1148218, at *2 (S.D. W. Va. Mar. 25, 2011).
[7] The Fourth Circuit issued its mandate in this case on January 25, 2024.  Therefore, this Court has regained jurisdiction over this case.  *See United States v. Montgomery*, 262 F.3d 233, 239 (4th Cir. 2001) (quoting *United States v. Rodgers*,

## II.    LEGAL STANDARD

Plaintiff moves for sanctions against Tincher for his failure to disclose discovery under Rule 37(c)(1) of the Federal Rules of Civil Procedure.

Both Federal Rule 37 and Rule 26 are applicable here.  Rule 26(e) of the Federal Rules of Civil Procedure requires a party to supplement discovery disclosures or responses to interrogatories in a timely manner if the party learns that the disclosure or response is incomplete or incorrect or if the pertinent, additional information has not been provided to the other parties in other means during discovery.  "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches."  Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment.  "The obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect."  *Id.*  "[I]nformation 'is incomplete or incorrect' in 'some material respect' if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation."  *Sender v. Mann*, 225 F.R.D. 645, 654 (D. Colo. 2004) (citations omitted).

Further, Rule 37 provides the remedy for a party's failure to disclose or supplement earlier responses.  Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "In addition to or instead of this sanction, the court . . . (A)

---

101 F.3d 247, 251 (2d Cir. 1996)) ("A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals.").

may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  Fed. R. Civ. P. 37(c)(1)(A–C).

### III.    DISCUSSION

Plaintiff seeks an award of attorneys' fees and expenses.  He believes this award is warranted because had Tincher abided by his discovery obligations, Plaintiff would have had the *Fortune* lawsuit in advance of trial and would have introduced evidence regarding it.  If Plaintiff had the opportunity to introduce the *Fortune* lawsuit, Plaintiff would not have had to subsequently file two motions for sanctions, (ECF Nos. 180, 219), and a Rule 60(b) Motion for Relief from Judgment, (ECF No. 198), which he then had to appeal.  In deciding whether to award attorney fees, the Court considers whether a discovery violation occurred before considering a reasonable amount of fees to award.

#### A. Since a Discovery Violation has Occurred, an Award of Attorneys' Fees is Proper

The *Fortune* lawsuit falls within the requested information that should have been produced but was not.  The obligation to supplement arose when Tincher learned that his "prior disclosures or responses [were] in some material respect incomplete."  Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment.  This would have occurred when Tincher received notice of the *Fortune* lawsuit being filed, and Tincher was not relieved of his obligation even though Plaintiff served the discovery request late.  As the Fourth Circuit clarified, "[n]othing in Rule 26(e) relieves a party from the obligation to supplement that party's discovery responses on the basis that the original discovery request was untimely."  *Morgan*, 90 F.4th at 180.  Further, since Tincher did not object to the untimeliness of Plaintiff's discovery request, and because this Court did not

find good cause excusing Tincher's failure to object, such objection is waived.  *Id.* (citing Federal Rule of Civil Procedure 33(b)(4)).  Therefore, as the Fourth Circuit concluded when analyzing Plaintiff's Rule 60(b) Motion, "Tincher's failure to disclose evidence of the *Fortune* lawsuit, irrespective whether that failure was inadvertent or intentional, was misconduct."  *Id.*  That misconduct directly violated Rule 26(e), which required Tincher to supplement his discovery response.  Fed. R. Civ. P. 26(e)(1)(A).

The failure to supplement is grounds for a sanction, as provided by Federal Rule of Civil Procedure 37(c)(1), so long as it was not "substantially justified or . . . harmless."  There is no evidence to suggest that it was.  Tincher asserts in his response that since the *Fortune* lawsuit is a publicly available document, Tincher's counsel "did not believe there was a duty to supplement." (ECF No. 224 at 2.)  This is a red herring.  Parties still have a duty to produce documents requested during discovery, even if the requested documents are publicly available.  *See Richardson v. Ford Motor Co.*, No. 3:13-cv-06529, 2014 WL 6471499, at *6–7 (S.D. W. Va. Nov. 18, 2014) (citing *Jackson v. West Virginia Univ. Hosps., Inc.*, No. 1:10-cv-107, 2011 WL 1831591, at *2 (N.D. W. Va. May 12, 2011) (citing cases) (holding that "'courts have unambiguously stated that [an objection based upon the availability of the documents to the requesting party] is insufficient to resist a discovery request.'"))  This is because even when the same documents requested may be publicly available or otherwise accessible by the requesting party, there are certain benefits that come from requiring documents to be produced through a formal discovery process.  *Id.*

Further realizing he will lose on the merits, Tincher makes procedural arguments that have no merit.  For instance, Tincher argues that Plaintiff's motion should be denied because Plaintiff did not attempt to meet and confer before filing his motion.  (ECF No. 224 at 12–13.)  It is correct

8

that both the Federal Rules and Local Rules of Civil Procedure require a party, before filing a motion, to in good faith confer or attempt to confer with the party failing to disclose discovery. Fed. R. Civ. P. 37(a)(1); L.R. Civ. P. 37.1(b). The meeting must be in person or by telephone. L.R. Civ. P. 37.1(b); *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 196 (N.D. W. Va. Mar. 30, 2000) (citing *Shuffle Master, Inc. v. Bally's Grand, Inc.*, 170 F.R.D. 166 (D. Nev. 1996)). However, the purposes of that rule make it irrelevant here. First, Plaintiff's motion is a renewed motion for sanctions. The original motion was filed on July 30, 2020. (ECF No. 180.) Therefore, Tincher has been on notice for years of this discovery dispute. Second, this discovery dispute initially came up in the middle of trial. Plaintiff was already prejudiced by Tincher's actions at that point. Meeting and conferring, or attempting to, at that moment would not have done anything to rectify the harm Tincher caused. Indeed, any effort to meet and confer would have been futile. *See Kidwiler*, 192 F.R.D. at 196–98 (finding, under the totality of the circumstances, that a telephone call or in person meeting was not required before plaintiff filed his motion to compel because such "would not likely have been successful in resolving this discovery dispute."). What is ultimately at issue here is Tincher's failure to supplement. That failure having already occurred, it is difficult to imagine what would be accomplished by "meeting and conferring" in the middle of trial.

Thus, the Court finds that Tincher violated his discovery obligation by failing to supplement his initial discovery response with the *Fortune* lawsuit, and therefore, sanctions are proper.

*B. Reasonableness of Attorneys' Fees and Expenses*

Ultimately, Tincher's misconduct deprived Plaintiff of the opportunity to present all possible relevant evidence at trial. Remedying this harm required Plaintiff to engage in countless hours of motion practice—including a successful appeal at the Fourth Circuit. Because of Tincher's misconduct and the extensive work Plaintiff had to engage in to remedy it, an award of attorneys' fees and expenses is warranted in this case.

As required by Rule 37(c)(1), the Court held a hearing on this matter on March 4, 2024. (ECF No. 232.) Following the hearing, as directed by the Court, Plaintiff filed a Supplemental Reply to Defendant Tincher's Response to Plaintiff's Renewed Motion for Rule 37 Sanctions, which contained attorneys' fees and expenses timesheets, totaling $117,753.00. (ECF No. 242.) Tincher did not file any objections to the requested amount.

An award of attorney fees and expenses must be reasonable. Fed. R. Civ. P. 37(c)(1)(A). The Court determines the reasonableness of attorney fees by following a three-step process. *McAfee v. Bozcar*, 738 F.3d 81, 88 (4th Cir. 2013). First, the Court figures out the "lodestar" amount, which is a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). There are twelve factors the Court considers in determining the "lodestar" figure:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom*, 549 F.3d at 321 (internal quotations omitted).

Next, the Court "should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Grissom*, 549 F.3d at 321 (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)). Then, the Court "awards some percentage of the remaining amount, depending on the degree of success enjoyed by the [party seeking fees]." *Johnson*, 278 F.3d at 337. Here, since the fees are being awarded as a sanction for a discovery violation, rather than as an award for successful resolution of the case as a whole, the Court does not need to proceed to the second and third steps. *See Fredeking v. Chase Bank USA, N.A.*, No. 3:16-cv-12415, 2018 WL 3849797, at *2 (S.D. W. Va. Aug. 13, 2018).

### 1. *Reasonable Hourly Rate*

"When calculating reasonable fees, establishing the hourly rate is generally the critical inquiry." *Wolfe v. Green*, No. 2:08-cv-01023, 2010 WL 3809857, at *4 (S.D. W. Va. Sept. 24, 2010) (quoting *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 289 (4th Cir. 2010)). An attorney's hourly rate is reasonable when it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Fredeking*, 2018 WL 3849797, at *2 (internal quotations omitted). "[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 179 (4th Cir. 1994). When the party seeking an award of fees and expenses does not provide evidence of prevailing rates in the community, the court may look to "previous awards in the relevant marketplace as a barometer for how much to award counsel in the immediate case." *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 228 (4th Cir. 2009). In addition, the court may rely on its own knowledge of such rates. *Rum Creek Coal Sales*, 31

F.3d at 174.

In this case, Plaintiff is represented by two experienced attorneys. The attorneys' experience goes to the ninth *Grissom* factor. One of Plaintiff's attorneys, Kerry Nessel, has been admitted to the West Virginia Bar since 1999. Plaintiff's other attorney, Abraham J. Saad, has been admitted since 2006. In this case, Mr. Nessel charged an hourly rate of $500 per hour. (ECF No. 242-1 at 5.) Mr. Nessel completed 135.3 hours of work researching, drafting briefs, meeting with his team to discuss relevant issues, reviewing applicable court orders, traveling to where the Fourth Circuit was seated, preparing for oral arguments, and attending hearings, amongst other things. (*Id.* at 1–5.) In addition to the work Mr. Nessel completed, he had expenses that totaled $891.85. (*Id.* at 5.) Mr. Saad charged an hourly rate of $450, and he completed 85.1 hours of work. (*Id.* at 13.) His work consisted of researching; editing; reviewing pleadings, transcripts, Mr. Nessel's brief drafts, and court orders; drafting portions of briefs; driving to and from Richmond, Virginia to orally argue before the Fourth Circuit; and attending team meetings. (*Id.* at 9–13.) In addition to the work Mr. Saad completed, he has $731.15 of expenses. (*Id.* at 13.)

In considering the fifth and twelfth *Grissom* factors, it is important to note that in 2018, in the Southern District of West Virginia, Judge Eifert in *Fredeking* found an hourly rate of $400 for an attorney with more than thirty years of experience to be reasonable. 2018 WL 3849797, at *2 ("An hourly rate of $400 is at the higher end of reasonable for litigation services in this jurisdiction, but it is within the reasonable range."). Here, while Mr. Nessel and Mr. Saad both charged more than $400 per hour and have a few years less of experience, the market rate for attorneys has increased since 2018. *See Wolfe*, 2010 WL 3809857 (finding an attorney fee award of $350 an hour for an attorney with significant litigation experience to be reasonable in an excessive force

12

case in the Southern District of West Virginia in 2010).

The eighth *Grissom* factor considers the amount in controversy and the results obtained. Here, while Plaintiff was successful on appeal, Plaintiff lost at trial. The Fourth Circuit has instructed there be a retrial, and while evidence of the *Fortune* lawsuit may aid Plaintiff, the Court cannot say with certainty whether it will change the outcome of the case. However, since Plaintiff was successful on the Rule 60(b) Motion, Plaintiff is entitled to attorneys' fees.

Based on the foregoing, the Court finds that the requested hourly rates of Plaintiff's counsel is consistent with the market rate. Mr. Nessel has approximately twenty-five years of litigation experience and Mr. Saad has almost twenty years. The Court finds that Mr. Nessel's ability and experience warrants a fee award of $500 per hour in this case. Since Mr. Saad has less experience than Mr. Nessel, an award of $450 per hour is reasonable.

Additionally, two paralegals, Luke Mathis and Arminta Spaulding, did work in this case. Mr. Mathis worked 49.8 hours, and Ms. Spaulding worked 18.1 hours. (ECF No. 242-1 at 8, 15.) Plaintiff requests a rate of $150 per hour for both. (*Id.* at 8, 15.) In 2010, Judge Copenhaver in the Southern District of West Virginia found that an hourly rate of $100 per hour was reasonable for paralegal work. *Wolfe*, 2010 WL 3809857, at *8. Thus, the Court finds that $150 per hour in 2024 is reasonable for the paralegal work done in this case.

### 2. Reasonable Number of Hours

"When reviewing a fee petition, the Court must exclude any hours that are excessive, redundant, or otherwise unnecessary." *Allen v. Monsanto Company*, No. 2:05-cv00578, 2007 WL 1859046, at *2 (S.D. W. Va. June 26, 2007) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). At a minimum, a fee application needs to contain a reasonably specific description of the

work performed, the date it was done, and the time spent on each task. *Central Cab Co., Inc. v. Cline*, 972 F.Supp. 370, 374 (S.D. W. Va. 1997). "While the Court should look for evidence of excessive billing . . . the Court 'need not, and indeed should not, become [a] green-eyeshade accountant[].'" *Fredeking*, 2018 WL 3849797, at *3 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011) (internal citations omitted)). When it comes to awarding fees, the "essential goal . . . is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838. Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* If a court finds there are hours that are excessive or redundant, a court may reduce the requested fee amount. *Allen v. Monsanto Co.*, No. 2:05-cv-0578, 2007 WL 1859046, at *2 (S.D. W. Va. June 26, 2007). A court may do this by subtracting item by item the hours that should be excluded, *Id.* (citing *Cent. Cab. Co., Inc. v. Cline*, 972 F.Supp. 370, 374 (S.D. W. Va. 1997)), or by a percentage "'as a practical means of trimming fat from a fee application.'" *Allen*, 2007 WL 1859046, at *2 (quoting *N.Y. State Ass'n Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).

The first three *Grissom* factors go to the reasonableness of the hours worked. The hours Plaintiff seeks attorneys' fees for relates to all the costs associated with having to file the initial motion for sanctions, a Rule 60(b) motion, a subsequent appeal, and a renewed motion for sanctions. The Court notes that a Rule 60(b) motion and a motion for sanctions are routine for a seasoned litigator and do not require any special expertise. However, the issue presented in this case was more complex than usual. The complexity of the issue presented is demonstrated by the fact that an appeal to the Fourth Circuit resulted in reversal of this Court. *See Rum Creek Coal Sales, Inc.*, 31 F.3d at 179.

14

Even so, there are hours billed for that are redundant and excessive. First, Plaintiff's time records shows that two attorneys and two paralegals spent a total of at least eighty hours in interoffice meetings. (ECF No. 242-1.) That accounts for approximately 28% of the overall hours billed for these motions.[8] Plaintiff offers no explanation as to why so many meetings were necessary. Therefore, the Court finds that the total number of hours of interoffice communications billed is unreasonable. *See Ramaco Res., LLC v. Fed. Ins. Co.*, No. 2:19-cv-00703, 2020 WL 7048292, at *15–17 (S.D. W. Va. Dec. 1, 2020) (calculating the "lodestar" amount and finding the amount of time billed for interoffice meetings to be unreasonable); *Allen*, 2007 WL 1859046, at *2–3 (reducing the plaintiff's requested fee by 66% after the court found excessive and redundant work was billed, including twenty hours of conference calls between four attorneys). While the total number of hours of interoffice meetings is unreasonable, the Court recognizes that some meetings were necessary. Thus, the Court finds that Plaintiff is entitled to fees for five hours of meetings for each attorney, five hours of meetings for Mr. Mathis, and 4.7 hours of meetings for Ms. Spaulding[9] (resulting in fees for 19.7 hours of meetings across four individuals).

Second, Plaintiff's records and expenses also shows that both attorneys attended and called in to hearings before this Court, and both attorneys and Mr. Mathis traveled to and from Richmond, Virginia to attend the oral argument before the Fourth Circuit. (ECF No. 242-1.) Across the three of them, this results in a total of 40.8 hours, and it is unclear why both, and sometimes three, individuals were necessary. (*Id.*) Indeed, especially considering that Mr. Nessel was the attorney who argued before the Fourth Circuit, nothing in the record reflects that each contributed something to those hearings that the other could not. This redundant billing, totaling 26.6 hours,

---

[8] Across two attorneys and two paralegals, 288.3 total hours were billed.
[9] Ms. Spaulding only billed for 4.7 hours of meetings. (ECF No. 242-1.)

accounts for approximately 9% of the hours expended,[10] and $346.52 of the $1,623.00 of expenses. (*Id.*)

Turning to the fourth factor, which is opportunity costs, Mr. Nessel and Mr. Saad spent a significant amount of time over the course of four years preparing and arguing motions that would not have been necessary had Tincher provided the discovery he was obligated to in the beginning. Specifically, the time Mr. Nessel and Mr. Saad spent working on the avoidable motions and arguments in this case took time away from other paying clients. *See Wolfe*, 2010 WL 3809857, at *3 (quoting *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974)) ("'[O]nce the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes.'")

Lastly, the sixth, seventh, tenth, and eleventh *Grissom* factors are not relevant to this case and do not present any issues.

Having considered the aforementioned factors, the Court finds it appropriate to reduce the overall requested attorneys' fees of $116,130.00. The Court reduces Mr. Nessel's hours by 20.7 hours—this accounts for interoffice meetings billed in excess of the five hours the Court is allotting). Mr. Nessel billed 135.3 hours at a rate of $500 per hour. After the Court's reduction, Mr. Nessel can recover for 114.6 hours at $500 per hour, totaling $57,300. All of Mr. Nessel's expenses ($891.85) are recoverable. The Court reduces Mr. Saad's hours by 35.7—this accounts for interoffice meetings billed in excess of the five hours the Court is allotting and a reduction for the hours spent attending hearings that Mr. Nessel was also at. Mr. Saad billed 85.1 hours at a rate of $450 per hour. After the Court's reductions, Mr. Saad can recover for 49.4 hours at $450 per

---

[10] The 25.6 hours does not include the time and travel that one attorney billed to be present at the hearings.

hour, totaling $22,230.  Ms. Spaulding billed 18.1 hours at a rate of $150 per hour, totaling $2,715. The Court does not reduce her hours.  Lastly, the Court reduces Mr. Mathis' hours by 31.1—this also accounts for interoffice meetings billed in excess of the five hours the Court is allotting and a reduction for the hours spent attending the oral argument at the Fourt Circuit.  Mr. Mathis billed 49.8 hours at a rate of $150 per hour.  After the Court's reductions, Mr. Mathis can recover for 18.7 hours at a rate of $150 per hour, totaling $2,805.  Since neither Mr. Saad nor Mr. Mathis receive credit for their time attending the oral argument at the Fourth Circuit, the Court similarly reduces Plaintiff's requested expenses ($1623.00) by $346.52, which is the combined amount Mr. Saad and Mr. Mathis spent on their Richmond, Virginia hotel rooms.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion.  (ECF No. 219.)  The Court awards a total of $85,050.00 in fees and $1,276.48 in expenses, resulting in a total award of $86,326.48.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    August 21, 2024

THOMAS E. JOHNSTON, CHIEF JUDGE